# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JEFF EDWARD SLIDER,**

       **Plaintiff,**

v.                                                     **Civil Action No. 2:08cv112**
                                                        **(Judge Bailey)**

**DR. FRIDLY, WARDEN POTOMAC HIGHLANDS
REGIONAL JAIL, DR. JERRY HAHN,[1] WARDEN
NORTHERN REGIONAL JAIL, DR. MUST, WARDEN
DENMAR CORRECTIONAL CENTER, BRIAN GRAPHERY
AND THE STATE OF WEST VIRGINIA,**

        **Defendant.**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this § 1983 civil rights action on November 12, 2008. After the plaintiff had been granted permission to proceed as a pauper, the undersigned conducted a preliminary review of the complaint and recommended that the complaint be dismissed in part and served in part. Specifically, the undersigned recommended that the plaintiff's claims against the Wardens of the Potomac Highlands Regional Jail, Northern Regional Jail and Denmar Correctional Center, as well as Brian Graphery and the State of West Virginia, be dismissed with prejudice for the failure to state a claim against which relief could be granted. The undersigned further recommended that Doctors Fridly, Must and Hahn be directed to file an answer to the complaint. On October 16, 2009, the Report and Recommendation was adopted in its entirety, judgment was

---

[1] In the complaint, the plaintiff names as a defendant, "Doctor of Northern Regional Jail." Upon service of the complaint, and receipt of the defendant's answer, the doctor of the Northern Regional Jail is now known as Dr. Jerry Hahn. Therefore, the Clerk is directed to make the appropriate change to the docket.

entered for the dismissed defendants and summonses were issued for Dr. Fridly, Dr. Must and Dr. Hahn.[2]

On November 30, 2009, Dr. Hahn filed a Motion to Dismiss and Alternative Motion for Summary Judgment. Because the plaintiff is proceeding without counsel in this case, a Roseboro Notice issued on December 1, 2009.

On December 23, 2009, Dr. Robert Must filed a Motion to Dismiss the plaintiff's complaint. Again, the Court issued a Roseboro Notice to the *pro se* plaintiff.

As of the date of this Order, Dr. Fridly has failed to file a response to the complaint and the plaintiff has failed to respond to either Roseboro Notice.

This case is before the undersigned for a Report and Recommendation on defendants Hahn and Must's motions to dismiss.

## II. Contentions of the Parties

### A. The Complaint

In the complaint, the plaintiff asserts that he has not received adequate psychiatric or medical treatment during his incarceration. In support of this claim, the plaintiff asserts that the defendants failed to provide him appropriate medical care for his diabetes resulting in severe nerve damage and severe pain and distress. Furthermore, he asserts that prior to his incarceration, his family doctor had planned to perform a surgical procedure for an insulin pump and another one for carpal tunnel syndrome.[3]

---

[2] The docket reflects that service was executed upon Dr. Hahn on 11/10/09, on Dr. Must on 10/23/09 and on Dr. Fridly on 10/21/09. See Dckt. Nos. 27-29.

[3] The plaintiff asserts that his carpal tunnel syndrome is so bad in his left hand that he is not able to bend his index finger.

2

As additional support for his claims, the plaintiff asserts that during his two years of incarceration, he was denied psychological and psychiatric counseling. Since his reincarceration, the plaintiff has again been denied any psychological counseling and psychiatric medications, even though he has a history of hospitalization for his psychological problems.

Next, the plaintiff asserts that has been deprived of an eye doctor. He has allegedly been told by staff at the Potomac Highlands Regional Jail that they do not have an eye doctor and will not take him to see one. The plaintiff asserts that, due to his diabetes, he is blind in his left eye and his right eye is bad. He further contends that, if he had surgery for an insulin pump, it would help stop some of the damage his diabetes is doing to his eyes and help preserve and prolong his life.

**B.     Defendant Dr. Hahn's Motion to Dismiss or for Summary Judgment**

In his motion, Dr. Hahn asserts that the plaintiff has failed to set forth "any specific allegations of wrongdoing, improper acts, failure to act, or other conduct . . . that [rises] to the level of a violation of the plaintiff's statutory or constitutional rights." Motion (Dckt. No. 30) at 1. Moreover, Dr. Hahn asserts that the plaintiff has failed to state a claim of deliberate indifference to his serious medical needs and that the plaintiff's medical records show that neither he, nor any employee of PrimeCare Medical, has been deliberately indifferent to the plaintiff's serious medical needs. Id. at 1-2. Dr. Hahn further contends that the plaintiff has been treated for his various medical conditions and that the plaintiff merely disagrees with Dr. Hahn's medical judgment. Memorandum (Dckt. No. 31) at 14. Dr. Hahn also asserts that there are no genuine issues of material fact with respect to the plaintiff's allegations and that the plaintiff failed to exhaust his administrative remedies prior to filing suit. Id. at 15-18. For these reasons, Dr. Hahn requests that the plaintiff's complaint be dismissed against him or summary judgment be granted in his favor.

### C. Defendant Dr. Must's Motion to Dismiss

In his motion, Dr. Must asserts that the plaintiff fails to specifically state the time frame for the alleged misconduct. Thus, Dr. Must asserts that it is impossible to determine whether the alleged deliberate indifference occurred within the applicable statute of limitations. Moreover, Dr. Must asserts that the plaintiff's only allegation against him is that, "doctor must and the administration at the Denmar Correctional Center deprived me of the right to the medical and surgical procedures to help preserve and to prolong my life and deprived me the right to a psychiatric doctor and of the psychological counciling (sp) that I was in need of or the rehabilitation programs. For one year I was deprived of these rights." Motion (Dckt. No. 35) at 1 (parenthetical in original).

Additionally, Dr. Must contends that the plaintiff fails to allege any contact specifically with him, which medical and surgical procedures the plaintiff believes he should have received, that the plaintiff was ever denied insulin or any other appropriate treatment for his medical needs, that psychiatric or psychological was medically necessary or the nature of the programs and rehabilitation that has been denied. Alternately, Dr. Must argues that the plaintiff has admittedly failed to exhaust his administrative remedies with regard to the claims in the complaint. For these reasons, Dr. Must requests that the plaintiff's claims against him be dismissed.

### III. Standards of Review

#### A. Motion to Dismiss

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc. v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, the Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. Id. In other words, the complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable." Id. at 555, 570. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

**B.   Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material

facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## IV. Analysis

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[4] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate

---

[4] Id.

6

unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 101-102.

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, *inter alia*, that an inmate's failure to exhaust under the PLRA is an affirmative defense and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. However, that decision does not abrogate the fact that an action under § 1983 is subject to exhaustion of administrative remedies as required by the PLRA. Nor does it abrogate well-established Fourth Circuit precedent which allows the Court to summarily dismiss a complaint in which the failure to exhaust is clearly evident. Anderson v. XYZ Correctional Health Services, 407 F.3d 674 (4th Cir. 2005).

Here, the plaintiff alleges claims against three doctors, two of which contract their medical services for the Regional Jail Authority, and one who contracts his medical services for the West Virginia Division of Corrections ("WVDOC"). The Regional Jail Authority and the WVDOC have the following exhaustion procedures.

### West Virginia Regional Jail Authority

The Regional Jail Authority has a three-step grievance process. First, the prisoner must file a Level One grievance with the Administrator on an inmate grievance form which is to be provided by jail personnel. If unsatisfied with the Level One decision, the prisoner may proceed to Level Two by filing an appeal with the Chief of Operations. Such appeal must be filed, in writing, within five days of the receipt of the Administrator's decision, and must include a copy of the initial complaint

and the Administrator's decision. Within five (5) days of receipt of a Level Two decision, an inmate may request a review by the office of the Executive Director. The inmate must mail copies of the original complaint and copies of all responses to the office of the Executive Director.

### West Virginia Divisions of Corrections

The WVDOC has established a three level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues. The first level involves filing a G-1 Grievance Form with the Unit Supervisor. If the inmate receives no response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator. Finally, the inmate may appeal the Level 2 decision to the Commissioner of the Division of Corrections.

### Plaintiff's Exhaustion Attempts

In the complaint, the plaintiff asserts that he inquired with "medical staff" about the grievance procedures. Petition at 2. He does not, however, indicate whether he made this inquiry with Regional Jail Authority staff or WVDOC staff. Nor does he indicate whether he inquired as to the Regional Jail Authority's procedures, the WVDOC's procedures, or both. Nonetheless, the plaintiff asserts that he was told the administrative grievance procedure would be a waste of time because the medical procedures he sought would not be approved. Id. He also states that when he sent a grievance to the "Warden" about seeing an optometrist, he was told that an eye appointment would be made for him. Id.

In this case, the plaintiff concedes that he did not file any grievances because he thought it would be futile to do so. However, the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements . . ." see Booth v. Churner, 532 U.S. at 741, n. 6. Thus, the fact that the administrative remedy process would likely not produce the relief the

plaintiff wanted, is not sufficient reason for failing to even attempt that process. Moreover, if the plaintiff was not satisfied with the Warden's response to the requests he did make, the plaintiff was obligated to pursue those requests through the appropriate appeals process, whether that be levels two and three of the Regional Jail's administrative process, or levels two and three of the WVDOC's administrative process. The plaintiff has admittedly not sought relief at all levels of either the Regional Jail Authority's administrative remedy process or the WVDOC's administrative remedy process. Accordingly, it is clear from the face of the complaint that the plaintiff failed to exhaust his claims prior to filing suit and his complaint should be dismissed. See Woodford, 548 U.S. at 85 ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

## V. Recommendation

For the reasons set forth herein, the undersigned recommends that the defendants' Motions to Dismiss (Dckt. Nos. 30 and 35) be **GRANTED** and that the plaintiff's complaint (Dckt. No. 1) be **DISMISSED without prejudice** for the failure to exhaust administrative remedies.[5]

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985);

---

[5]Although the undersigned does not condone or approve of Dr. Fridly's blatant disregard of the summons and complaint he received, the undersigned notes that the failure to exhaust administrative remedies applies equally to the plaintiff's claims against that defendant. Thus, the undersigned recommends dismissal of the entire complaint and all of the remaining defendants.

9

United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: March 12, 2010.

/s/ David J. Joel
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE